STATE of Minnesota, Respondent,

v.

Angelo Scott ROTTELO, Appellant.

No. A10–1487.

Court of Appeals of Minnesota.

May 9, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and John J. Choi, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Cathryn Middlebrook, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; WRIGHT, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Appellant challenges the revocation of his probation and the execution of his sentence on the grounds that his failure to maintain contact with his probation officers was not intentional or inexcusable and that the need for his confinement does not outweigh the policies favoring probation. We affirm.

## FACTS

Between 1986 and 2004, appellant Angelo Rottelo was convicted of several alcohol-related driving offenses and several probation violations.

In December 2004, an officer observed appellant's vehicle changing lanes, almost striking the officer's squad car, and weaving. The officer learned that the driver's license of the car's registered owner (appellant) had been cancelled as inimical to public safety. Appellant was taken to the Ramsey County law enforcement center, where a preliminary breath test (PBT) revealed a blood alcohol concentration of .115. After hearing the implied consent advisory, appellant refused further tests.

He pleaded guilty to first-degree refusal to submit to chemical testing and, although it was noted that his "prognosis for probation appear[ed] extremely poor," he received a stay of execution of 42 months and seven years of probation. His probation conditions included remaining in contact with his probation officer. In Decem-

ber 2005, appellant moved to the state of Washington, and his probation was transferred. Appellant returned to Minnesota in 2006.

By June 2007, appellant had no known domicile, phone number, or mailing address. Ramsey County learned that he had absconded from probation supervision in Washington state and issued a warrant for his arrest. In January 2008, appellant called his former Minnesota probation officer, who advised him to turn himself in and gave him the name and phone number of the probation officer currently assigned to his case. He did not turn himself in. Appellant left a phone message for his new probation officer, but the officer was unable to reach appellant or to leave him a message.

In February 2008, appellant left a second message for the new probation officer, but the officer was again unable to reach appellant or leave him a message.

In May 2010, appellant was arrested on the Ramsey County warrant. The district court revoked his probation and executed his sentence.

### ISSUE

Did the district court abuse its discretion by revoking appellant's probation?

### ANALYSIS

 A district court has broad discretion to determine if there is sufficient evidence to revoke probation and will be reversed only if there is a clear abuse of that discretion. *Austin*, 295 N.W.2d at 249–50. When revoking probation, a district court must specify the conditions that were violated, find that the violation was intentional or inexcusable, and find that the need for the defendant's confinement outweighs the policies favoring probation. *Id.* at 250.

The district court made the appropriate findings:

I find that [appellant] did violate Probation by failing to maintain contact with Probation by absconding from Probation. [He] did not keep Probation informed of [his] address, keep in contact with Probation as ordered, give them any information required as a condition of probation. [His] whereabouts have been unknown since at least 6–26–07, and very likely before that. [He was] sentenced on 6–1–05.

. . . .

I find that this violation is inexcusable and intentional. I also find that the policies of Minnesota which favor probation, which are to give you a chance for rehabilitation, are outweighed by the fact that nobody knows what [he has] been doing, to be honest.

Next, I think that confinement is necessary, because not to execute the sentence would unduly depreciate the seriousness of the violation if probation were not revoked. It would basically make a mockery of probation. [He has not] been in contact for all these years.

. . . .

I further find that the only way I can be assured that [he does] have treatment is to have it take place in a correctional facility because [he has not] kept in contact with Probation.

Appellant admits that, by absconding, he violated a condition of his probation, but argues that the evidence does not support either the finding that his violation was inexcusable and intentional or the finding that his need for confinement outweighed the policies favoring probation.

### A. Appellant's violation was intentional or inexcusable.

 Appellant argues that his absconding was not inexcusable because, after re-

turning to Minnesota in 2006, "he felt it was more important to take care of his family instead of turning himself in ..., a decision ... [that] is understandable given appellant's need to provide for and support his family." But, if appellant had maintained contact with probation officers as he was required to do, both in Minnesota and in Washington state, he would not have needed to turn himself in and the probation departments could provide support for his claims that he "fully complied with the conditions of his probation," and "has remained law-abiding, ... has not committed any criminal offenses, and has abstained from alcohol" since that time. These claims are supported only by appellant's statements, and, as the district court observed, "There's no way I know whether you're telling me the truth because you haven't been in contact with anybody for three years."

### B. Appellant's need for confinement outweighed the policies favoring probation.

■■ "When determining if revocation is appropriate, courts must balance the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety, and base their decisions on sound judgment and not just their will." *State v. Modtland,* 695 N.W.2d 602, 606–07 (Minn.2005) (quotation omitted).

Appellant makes the often-heard argument that he "committed no new crimes" while he was on probation. But, because he was not in contact with probation, all that we know is that appellant was not arrested for any new crimes. Similarly, he argues that "[i]n all other ways, [he] complied with the conditions of his probation, even while unsupervised." But one condition of probation was that he not be unsupervised, and compliance with that condition would have provided support for his contention that he complied with the other conditions.

Appellant also argues that "his criminal record is minimal; [the 2004 offense] was his first felony alcohol-related offense, with only three qualified prior impaired driving incidents from 1996 and 1999. This was also appellant's first violation while on probation." But appellant's criminal record supports rather than refutes his need for confinement and treatment. The district court's finding that "the only way I can be assured that [he does] have treatment is to have it take place in a correctional facility because [he has not] kept in contact with Probation" reflects appellant's history of multiple offenses and repeated noncompliance with probation and supports the finding that appellant's need for confinement outweighs the policies favoring probation.[1]

### DECISION

The district court did not abuse its discretion by revoking appellant's probation and executing his sentence because he failed to remain in contact with his probation officers.

**Affirmed.**

---

1. By this opinion, we do not suggest that a defendant's failure to keep a single appointment with a probation officer should result in the revocation of probation. Rather we are simply holding that an essential condition of being on probation is to maintain contact with one's probation officer.