*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1741**

State of Minnesota,
Respondent,

vs.

Anthony Roger Prout,
Appellant.

**Filed August 15, 2016
Affirmed
Connolly, Judge**

St. Louis County District Court
File Nos. 69DU-CR-13-649; 69DU-CR-13-738

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Kristen E. Swanson, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and

Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**CONNOLLY**, Judge

In this probation-revocation appeal, appellant argues that the district court abused its discretion when it found that appellant was in violation of a condition of his probation requiring him to remain in contact with his probation officer, when he had received no notice of that alleged violation prior to or at his revocation hearing; and that the district court abused its discretion when it revoked appellant's probation without finding that appellant was a public-safety risk or that the need for confinement outweighed the policies favoring probation. We affirm.

## FACTS

Appellant Anthony Roger Prout pleaded guilty to one count of first-degree aggravated robbery and one count of attempted first-degree robbery stemming from two incidents on February 8, 2013 and February 15, 2013. On each occasion, appellant, while intoxicated, pointed a handgun at an individual on the street, attempting to obtain cash or cigarettes. During the February 8, 2013 incident, appellant seized cigarettes at gunpoint but on February 15, 2013, the individual had no cigarettes or money and a friend convinced appellant to leave. On August 26, 2013, appellant was sentenced to 48 months in prison on the first-degree aggravated-robbery charge and 30 months on the attempted first-degree robbery charge. The district court awarded a downward dispositional departure, stayed the execution of the sentence on both counts, and placed appellant on four years' probation. His probation special conditions included: (1) serve 12 months at the Northeast Regional Corrections Center; (2) undergo a complete chemical assessment and abide by all

2

recommendations for treatment and aftercare as directed by the probation officer; (3) enter and complete cognitive skill training; (4) attend Alcoholics Anonymous at least weekly, journal attendance, and obtain/maintain contact with a sponsor; (5) do not enter bars or liquor stores; (6) abstain from alcohol use and submit to random testing at the request of the probation officer; (7) abstain from use or possession of all mood-altering substances; (8) write letters of apology to the victims to be submitted through the probation officer for approval and distribution; (9) no use or possession of firearms; (10) undergo a mental-health diagnostic assessment and abide by all recommendations for treatment and appointments as directed by the probation officer; (11) take medications in the prescribed dosage and frequency and attend all medical appointments; (12) submit to DNA sampling; (13) maintain full-time employment; and (14) follow all general conditions set forth in the probation agreement.

The probation general conditions included: (1) obey all State and Federal laws and local ordinances; (2) report to the probation officer as directed every Wednesday; (3) do not leave Minnesota without permission from the probation officer; (4) do not change residence or employment without approval of the probation officer; (5) immediately notify the probation officer if appellant is arrested or has contact with law enforcement for any reason; (6) cooperate with and be truthful with the probation officer; (7) comply with any additional requirements imposed by the probation officer; (8) do not possess mood-altering substances unless prescribed by a physician and submit to chemical testing at the request of the probation officer; (9) comply with the Supervision Case Plan; (10) comply with all institution, treatment and programming rules; (11) do not possess any type of dangerous

3

weapon or engage in any type of assaultive behavior; (12) submit at any time to an unannounced visit and/or warrantless search by the probation officer; and (13) abide by all additional conditions as imposed.

On October 7, 2013, appellant was found to have violated his probation by failing to give a urinary analysis as directed by his probation officer because he "really couldn't go [and] knew it was going to be a long time before [he] could and [he] had [a doctor's appointment] that day and . . . didn't have time to wait around." The district court continued his probation.

On July 21, 2014, the probation officer recommended that the stay of execution of sentence be vacated because appellant had violated probation general condition number eight, "submit to chemical testing at the request of my [p]robation [o]fficer," by walking out of the probation office for a second time without giving a sample, and violation of probation general condition number ten, failure to "[c]omply with all institution, treatment and programming rules," by failing to attain a sponsor or attend pro-social recovery meetings. The district court revoked the stay of execution and issued a warrant for appellant's arrest. Appellant was not apprehended until approximately one year later when he was "spotted out at a bar."

At a July 27, 2015 probation-revocation hearing, appellant admitted to two violations of probation: (1) failure to submit to chemical testing at the request of his probation officer by walking out of the probation officer's office on July 16, 2014 without providing a sample and (2) failure to comply with all institutional and treatment programming rules by failing to attain a sponsor to help appellant through the post-

4

treatment process. Appellant also admitted that he absconded from probation for over a year because he "met up with [the probation officer] only a few times and might have got off on the wrong foot, and [appellant] just decided not to come back." When asked, "Did you leave or abscond from probation?" appellant answered, "Yeah. Yes." The district court replied, "All right. That explains why . . . this was all back in 2014, over a year ago[.]" The probation officer testified that appellant struggled at his treatment program at the Northeast Regional Corrections Center (NERCC); he did not complete treatment; he did not check in with the probation officer for the first months; he did not do anything about the chemical-dependency probation obligation even after prompting; when he was asked to perform a urinary analysis he claimed he could not produce urine; and when the probation officer told him he could not give a urine sample when he came back the next month, appellant said "[screw] it! Violate me then." The probation officer testified that appellant "fell off the face of the earth [and that the probation officer] went looking for him several times, sent letters, [and] called . . . ."

Based on appellant's admissions the district court revoked appellant's probation stating:

> I find [that] based on the defendant's admissions here today under oath that he violated General Condition Number 8, walking out of his probation officer's office on July 16th of 2014, without submitting a sample for testing his urine. I also find that he specifically violated General Condition Number 2 by failing to report to his probation officer as directed for over a year. Thirdly, I find he has violated General Condition Number 10 by failing to comply with the aftercare and treatment programming that he was involved in as a condition of his probation.

I find that these violations were intentional and inexcusable. I find that to continue probation and to grant the continued stay of execution of two presumptive prison sentences for serious crimes would unduly depreciate the seriousness of the violations and the seriousness of undermining probation in and of itself. I find that based on the defendant's statement here under oath, including the fact that he certainly did not attempt to turn himself back into probation or to law enforcement on the year-old warrant [and] was arrested without turning himself in, [continuing probation] would unduly depreciate his violations, and, therefore, he's unamenable to continued probationary sentence.

The district court revoked the stay of execution and imposed the 30-month sentence and the 48-month sentence to each be served concurrently.

## D E C I S I O N

Before revoking probation, the district court "must (1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Appellant argues that the district court erred in revoking his probation by failing to give notice of a probation violation concerning his failure to maintain contact with his probation officer, a violation of the first *Austin* factor, and by failing to find that the need for confinement outweighs the policies favoring probation, a violation of the third *Austin* factor.

Appellant argues that the state's failure to provide written or actual notice of the violation of general condition number two, failing to report to his probation officer as directed for over a year, deprived appellant of his due-process rights. "[A] defendant shall . . . be notified in writing and in such manner as the court directs of the grounds alleged to

6

exist for revocation of the stay of imposition or execution of sentence." Minn. Stat. § 609.14, subd. 2 (2014). It is undisputed that appellant was only given written notice of violating general condition eight and general condition ten.

Appellant relies on *State v. Eneback*, to support his claim that inadequate notice was given. The court in *Eneback* determined that by giving the defendant a copy of a prostitute's statement, made to the police, and by informing him at the initial revocation hearing that his failure to cooperate in the treatment program would be asserted as a ground for a revocation, Eneback was given adequate notice to permit him to prepare to refute the allegations. *State v. Eneback*, 272 N.W.2d 27, 29 (Minn. 1978). The court held that where a defendant receives actual notice of the specific ground that would be used as the basis for revocation, it was immaterial that the written notice of probation violation was inadequate. *Id.* Appellant argues that, even though he admitted to absconding from probation for over a year, he was never asked to admit or deny this particular violation, and the district court gave no indication that it was inclined to consider this violation until after the substantive portion of the hearing was over.

We agree that it is necessary for a probationer to receive notice and understand the nature of any alleged violation in order to receive a fair hearing and prepare his defense. In this case, appellant did not receive a written notice of the violation because he just admitted to it in response to a question from the district court during the hearing. However, we also believe that the most basic requirement of being on probation is to actually maintain contact with your probation officer. Appellant admitted that he did not do this of

7

his own volition so we are at a loss to comprehend how he might not believe that such a failure might have consequences regardless of whether he received notice.[1]

In any event, to prevail on appeal, an appellant must show both error and prejudice resulting from the error. *Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975); *see Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn. App. 1993) (stating that the appellant bears the burden of demonstrating that error is prejudicial), *review denied* (Minn. June 28, 1993). "[Appellate courts] will not reverse a correct decision simply because it is based on incorrect reasons." *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987). Appellant has not shown that failing to provide written notice of violating general condition number two, failure to report to his probation officer as directed, has caused him prejudice. Appellant admitted to violating general conditions eight and ten. He also admitted to absconding from probation for over a year, a violation of general condition two. His probation was revoked for violating all three of the conditions, not solely for disappearing for a year. Even without the specific notification of

---

[1] At the probation revocation hearing, the following conversation occurred between the district court judge and appellant:

> THE COURT:  Can you tell me just what happened?
> THE DEFENDANT:  Well, I got out of NERCC and met up with [my probation officer] only a few times and might have got off on the wrong foot, and I just decided not to come back.
> THE COURT:  Come back to?
> THE DEFENDANT:  Probation.
> THE COURT:  Did you basically abscond from probation?
> THE DEFENDANT:  What was that?
> THE COURT:  Did you leave or abscond from probation?
> THE DEFENDANT:  Yeah.  Yes.

violating the requirement that he report to his probation officer as directed, appellant had notice of other probation violations, was given an opportunity to be heard, was represented by an attorney, and the district court judge inquired about appellant absconding from probation prior to appellant's attorney's closing arguments.

Appellant also argues that the district court abused its discretion when it revoked his probation without finding that the need for confinement outweighs the policies favoring probation. In assessing this third *Austin* factor, the supreme court has stated that district courts "should refer" to the following American Bar Association Standards for Criminal Justice:

> Revocation followed by imprisonment should not be the disposition . . . unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>
> (i)   confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii)   the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii)  it would unduly depreciate the seriousness of the violation if probation were not revoked.

*State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005) (quoting *Austin*, 295 N.W.2d at 251).

In the absence of some ambiguity surrounding the use of the word "or," this court reads it in the disjunctive and requires that only one of the possible alternatives be present in order for the standard to be satisfied. *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000). Therefore, appellant's claim that the district court abused its discretion by failing to

consider whether the need for confinement outweighs policies favoring probation must fail if any one of the three requirements for the third *Austin* factor were supported by the record.

"The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted). "The [district] court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249-50.

We conclude that the district court did not abuse its discretion in this case. In regards to the third *Austin* factor, the district court stated that:

> [t]he continued stay of execution of two presumptive prison sentences for serious crimes would unduly depreciate the seriousness of the violations and the seriousness of undermining probation in and of itself . . . . [and that] based on the defendant's statement . . . under oath, including the fact that he certainly did not attempt to turn himself back into probation or to law enforcement on the year-old warrant [and] was arrested without turning himself in, [continuing probation] would unduly depreciate his *violations,* and, therefore, he's unamenable to [a] continued probationary sentence.

(Emphasis added).

Appellant was charged with two serious crimes, aggravated robbery and attempted aggravated robbery, which called for presumptive prison sentences. Appellant received a downward dispositional departure. In the context of probation revocation, the Minnesota Sentencing Guidelines counsel that:

> Great restraint should be exercised in imprisoning offenders who were originally convicted of low severity level offenses or

10

> who have short prior criminal histories . . . . Less judicial tolerance is urged for offenders who were convicted of a more severe offense or who had a longer criminal history. For both groups of offenders, however, the court should not reflexively order imprisonment for non-criminal violations of probationary conditions.

Minn. Sent. Guidelines III, subd. B. First-degree aggravated robbery carries an offense severity of eight out of a maximum severity of eleven. Minn. Stat. § 609.245, subd. 1 (2014); Minn. Sent. Guidelines V, subd. A. Appellant should therefore be entitled to "less judicial tolerance." *See State v. Osborne*, 732 N.W.2d 249, 254 (Minn. 2007) (appellant entitled to less judicial tolerance for a probation revocation of a level nine offense).

Appellant admitted to absconding from probation for no other reason than "getting off on the wrong foot" with his probation officer, he admitted to failing to provide a urine analysis sample, and he admitted to failing to comply with the aftercare treatment requirement. Absconding from probation is a serious violation. *State v. Rottelo*, 798 N.W.2d 92, 95 (Minn. App. 2011) (holding probation revocation was justified for failing to maintain contact with probation officers). We conclude that nothing prohibited the district court from considering the fact that appellant inexplicably disappeared for over a year when it determined whether to continue his probation. In this case, there is sufficient evidence in the record to support a finding that it would unduly depreciate the seriousness of the violation if probation were not revoked. Appellant has provided no excuse for his failure to satisfy the conditions for probation other than stating that he and the probation

11

officer got off on the wrong foot. For these reasons, we conclude that the district court did not abuse its discretion in revoking appellant's probation for violating all three conditions.

**Affirmed.**