*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1072**

State of Minnesota,
Respondent,

vs.

Marco Antonio Zavala,
Appellant.

**Filed February 14, 2024**
**Affirmed**
**Cochran, Judge**

Watonwan County District Court
File No. 83-CR-18-680

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Julie Kelley, Watonwan County Attorney, St. James, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Max B. Kittel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Cochran, Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

Appellant challenges the district court's order revoking his probation and executing his sentence. He argues that the district court abused its discretion by finding that the need

for confinement outweighs the policies favoring probation. Because the district court's finding is supported by the record, we conclude that the district court did not abuse its discretion by revoking appellant's probation. We therefore affirm.

**FACTS**

On December 3, 2018, respondent State of Minnesota charged appellant Marco Antonio Zavala with third-degree assault, felony domestic assault, and obstructing a police officer. The charges were based on allegations that Zavala physically abused his wife during an altercation at their residence and then prevented law enforcement from responding to the altercation by temporarily blocking the entrance to the home.

Zavala pleaded guilty to felony domestic assault and agreed to participate in drug court as part of a plea agreement with the state. In exchange for his guilty plea, the state dropped the remaining charges and recommended a downward dispositional departure from Zavala's presumptive prison sentence, pending the completion of a presentence investigation report. The presentence investigation report revealed that Zavala had a lengthy criminal history, including three previous convictions of felony domestic assault and one previous conviction of third-degree assault.

On May 28, 2019, the district court sentenced Zavala to 36 months in prison, stayed for five years, plus 15 days in jail, which constituted a downward dispositional departure. As part of the sentence, the district court also required Zavala to comply with several conditions of probation. The conditions included, among others: notifying his probation officer within 72 hours of contact with law enforcement; remaining in contact with his probation officer, as directed; abstaining from alcohol and other controlled substances; and

2

completing the county drug-court program, a chemical-dependency assessment, and a domestic-abuse evaluation.

Approximately one month after sentencing, Zavala's probation officer filed a report alleging that Zavala had violated several conditions of his probation by failing to (1) notify his probation officer within 72 hours of contact with law enforcement, (2) contact his probation officer as directed, (3) serve his jail sentence, (4) complete the drug-court program, and (5) complete a chemical-dependency assessment. The report noted that Zavala flouted "every aspect of probation supervision." The report also expressed "serious concerns" about Zavala's commitment to being successful on probation. Zavala's probation officer filed an addendum to the report four days later, alleging that Zavala had violated additional conditions of his probation by refusing to submit to a drug test and by using marijuana.

On July 16, 2019, the district court held a probation-violation hearing. Zavala admitted to each of the alleged violations and explained that he was struggling with his mental health because he and his wife had separated. The district court expressed frustration with Zavala's failure to comply with the conditions of his probation but noted that sending Zavala to prison would punish his wife and children by preventing him from working to support them. The district court reinstated Zavala on probation with the additional condition that he serve two 90-day sentences in jail.[1]

---

[1] While Zavala was serving his first 90-day sentence, Zavala's probation officer asked the district court to release him from jail early so he could receive inpatient treatment at a medical center. The district court granted this request. Zavala's probation officer also asked the district court to defer Zavala's second 90-day sentence because he was "being

On April 4, 2023, almost four years later, Zavala's probation officer filed a second probation-violation report. The report alleged that Zavala had violated the conditions of his probation by failing to (1) complete a domestic-abuse evaluation as required when he was initially sentenced, (2) remain in contact with his probation officer as directed, and (3) notify his probation officer within 72 hours of contact with law enforcement. Regarding the first violation, the report alleged that Zavala had not completed the court-ordered domestic-abuse evaluation since being placed on probation in 2019, despite probation officers' efforts to help him do so. The report noted that probation officers provided Zavala with a list of resources and tried to help him obtain health insurance after Zavala indicated that he could not afford to pay for the evaluation. Despite these efforts, Zavala had not completed the evaluation by the date of the report. With regard to the second violation, the report alleged that Zavala had not contacted his probation officer in more than six months, notwithstanding his probation officer's repeated efforts to get in touch with him by calling him and by writing to him and his mother. Finally, regarding the third violation, the report alleged that Zavala failed to notify his probation officer after he was charged with new traffic violations.

The district court held a probation-violation hearing. During the hearing, Zavala admitted to each of the alleged violations. The district court accepted the admissions, found that the violations were intentional and inexcusable, and set a dispositional hearing for the following week.

---

successful in the community" by maintaining full employment, attending outpatient treatment, and attending therapy. The district court also granted this request.

4

At the dispositional hearing, the district court heard arguments from the parties and Zavala on the appropriate disposition. The state asked the district court to execute Zavala's sentence. In support of its position, the state noted that Zavala was on probation for "his fourth felony domestic [assault] conviction." The state then emphasized Zavala's failure to complete a domestic-abuse evaluation as required. According to the state, Zavala's failure to do so was especially troubling in light of his criminal history of repeated domestic-assault offenses because it "goes right to the heart of the problem." The state also asserted that Zavala would be able to complete the necessary domestic-abuse evaluation in prison. And the state noted that Zavala had avoided his probation officer and thereby evaded drug testing, which raised concerns, given his history of drug use. For these reasons, the state urged the district court to revoke Zavala's probation.

Defense counsel asked the district court to reinstate Zavala on probation with a "lengthy" jail sentence. Defense counsel noted that it had been four years since Zavala's last probation violation and stated that he had "made progress" in that time. Defense counsel also explained that Zavala was homeless, which made it difficult for him to pay for the domestic-abuse evaluation and stay in touch with his probation officer. Zavala also made statements on his behalf. Zavala stated that his relationship with his wife had stabilized since they had separated. He also stated that he had enrolled in a diesel-mechanic program and had received job offers from three potential employers. And he explained that he was motivated to change his behavior so he could provide for his children and care for his mother.

5

After considering the parties' positions, the district court revoked Zavala's probation and executed his sentence. The district court made several findings in support of its decision. The district court found that Zavala admitted to the alleged probation violations, that the probation violations were intentional and inexcusable, and that the need for confinement outweighs the policies favoring probation. With regard to this last finding, the district court made additional, supporting findings including that confinement was necessary to protect the public from further criminal activity, that Zavala was in need of treatment that could most effectively be provided in prison, and that reinstating Zavala on probation would unduly depreciate the seriousness of his probation violations. Based on these findings, the district court revoked Zavala's probation and executed the stayed prison sentence.

Zavala appeals.

**DECISION**

If an offender with a stay of execution admits a probation violation, a district court may either continue the offender on probation or revoke probation and execute the sentence. Minn. R. Crim. P. 27.04, subd. 3(2)(b)(iv)-(v); *see also* Minn. Stat. § 609.14, subds. 1, 3 (2022). Before a district court may revoke probation, the district court must make three specific findings: (1) that the probationer violated a specific condition of their probation; (2) that the violation was intentional or inexcusable; and (3) that the need for confinement outweighs the policies favoring probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). These findings are commonly known as the *Austin* factors. In making these findings, the district court "must seek to convey [its] substantive reasons for

revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). A district court's decision to revoke probation "cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotation omitted).

While a district court must make the necessary findings on the *Austin* factors to support revocation, a district court has "broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249-50. "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Lopez*, 988 N.W.2d 107, 122 (Minn. 2023).

Zavala challenges only the district court's finding on the third *Austin* factor—that the need for his confinement outweighs the policies favoring probation. In determining whether the third *Austin* factor is met, the district court should consider whether: (1) "confinement is necessary to protect the public from further criminal activity by the offender"; (2) "the offender is in need of correctional treatment which can most effectively be provided if he is confined"; or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607 (quotation omitted). These considerations are known as the *Modtland* subfactors. *State v. Smith*, 994 N.W.2d 317, 320 (Minn. App. 2023), *rev. denied* (Minn. Sept. 27, 2023). A district court need only find that one of the *Modtland* subfactors favors confinement for the third *Austin* factor to be satisfied. *Id.*

At Zavala's dispositional hearing, the district court considered each of the three *Modtland* subfactors. The district court found that each of the subfactors was met and explained its reasoning on the record. Zavala challenges the district court's findings on each of the subfactors.

Because only one *Modtland* subfactor is necessary to support revocation, we begin and end our analysis by focusing on the first subfactor—whether confinement is necessary to protect the public from further criminal activity by the offender. *See* 695 N.W.2d at 607. When discussing this subfactor, the district court emphasized that Zavala was on probation for felony domestic assault but had failed to complete a court-ordered domestic-abuse evaluation, despite having four years to do so. The district court explained that the domestic-abuse evaluation was "one of the most important" parts of his probation terms because it was designed to identify his "domestic abuse issues" and recommend appropriate treatment. The district court expressed serious concern that, without the evaluation and treatment, Zavala may engage in further criminal domestic assault given his criminal history. Based on these facts and considerations, the district court found that the first *Modtland* subfactor was met.

Zavala argues that the district court abused its discretion when it found that confinement was necessary to protect the public from further criminal activity by Zavala because he was not convicted of any new crimes while on probation. Zavala emphasizes that he was on probation for "nearly five years without any sort of assaultive convictions or probation violation behavior." We are not persuaded that Zavala has demonstrated an abuse of discretion by the district court.

As a preliminary matter, an offender does not need to commit a new crime for the district court to determine that "confinement is necessary to protect the public from *further criminal activity*." *Id.* (emphasis added) (quotation omitted); *see also State v. Rottelo*, 798 N.W.2d 92, 95 (Minn. App. 2011) (addressing and rejecting the "often-heard argument that [the appellant] committed no new crimes while he was on probation" (quotation omitted)), *rev. denied* (Minn. July 19, 2011). Accordingly, Zavala's assertion that the district court abused its discretion by finding that the first *Modtland* subfactor supported revocation because Zavala was not convicted of any new crimes while on probation is unavailing.

Moreover, the record supports the district court's finding that Zavala's confinement was necessary to protect the public from further criminal activity. The record shows that Zavala was on probation for felony domestic assault but failed to complete a key condition of his probation—a domestic-assault evaluation that would determine a course of treatment. The record also reflects that Zavala had three prior convictions of felony domestic assault and previously violated the conditions of his probation by, in relevant part, failing to contact his probation officer. Taken together, Zavala's history of engaging in felony domestic assault, his refusal to complete a domestic-abuse evaluation that would recommend a course of treatment, and his tendency to evade his probation officer demonstrate that Zavala posed a threat to public safety. Based on these undisputed facts, the district court reasonably determined that confinement was necessary to protect the public from Zavala's further criminal activity. Because we conclude that the first *Modtland* subfactor was met, we need not consider the other subfactors to conclude that the district

court did not abuse its discretion by finding that the third *Austin* factor was satisfied. *See Smith*, 994 N.W.2d at 320.

In sum, the district court has broad discretion in weighing the need for confinement against the policies favoring probation, and the district court carefully exercised its discretion here. Because the record supports the district court's determination that the need for confinement outweighs the policies favoring probation, we conclude that the district court did not clearly abuse its discretion by revoking Zavala's probation and executing his sentence.

**Affirmed.**