*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1258**

State of Minnesota,
Respondent,

vs.

Ryan Emmett Moore,
Appellant.

**Filed April 22, 2024**
**Affirmed**
**Reyes, Judge**

Pope County District Court
File No. 61-CR-19-106

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Neil Nelson, Pope County Attorney, Glenwood, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Reyes, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Appellant argues that the district court abused its discretion by revoking his probation after determining that the need for confinement outweighed the policies favoring probation. We affirm.

**FACTS**

In September 2020, appellant Ryan Emmett Moore pleaded guilty to soliciting to engage in sexual conduct through electronic communications with someone he reasonably believed to be a child under Minn. Stat. § 609.352, subd. 2a(1) (2018). The district court ordered that the Minnesota Department of Corrections prepare a presentence investigation (PSI) report and that appellant complete a psychosexual assessment prior to sentencing.

Appellant's PSI report, which incorporated findings from the psychosexual assessment, stated that appellant has a long criminal history, he is "an untreated level 3 sexual offender," his "predation is of immense community concern," and his behavior "represents a clear and convincing public safety risk." The PSI report recommended that appellant receive a stay of execution of sentence and be placed on supervised probation for three years. It also recommended that he complete "inpatient group sexual offender treatment" and abstain from using or possessing "alcohol or controlled substances" based on the psychosexual assessment noting that their use would "impede [appellant's ability] to progress in sex offender treatment" by increasing his impulsivity and impairing his judgment. The psychosexual assessment concluded that, under various sex-offender screening assessments, appellant was a "well above average risk," a "[h]igh priority for sexual and violence recidivism," and "a [h]igh priority for general criminal recidivism." The examiners noted that appellant had never completed sex-offender treatment because of his self-reported "failure to abide by rules and conditions of supervision."

In April 2021, the district court accepted appellant's guilty plea, sentenced him to 25 months in prison, and stayed execution for three years subject to placing him on

supervised probation. Appellant's probation conditions included that he complete the outpatient[1] sex-offender treatment program at CORE Professional Services (CORE), abstain from using or possessing unprescribed alcohol or drugs, and submit to random drug testing.

In September 2022, appellant's corrections agent filed a probation-violation report, alleging that appellant had tested positive for amphetamines; admitted to smoking methamphetamine; and that CORE had terminated appellant from treatment because of his failure to abstain from methamphetamine use, attend therapy sessions, or progress adequately with treatment. The report stated that "[appellant's] use of mood-altering chemicals is a significant concern, as he acknowledged all his sexual offenses were committed while he was under the influence."

The district court held a probation-violation hearing, at which appellant admitted to the violations. At his disposition hearing, the state presented testimony from CORE's clinical director, who was also one of the examiners who completed appellant's psychosexual assessment, and appellant's corrections agent. Both explained that appellant's assessments scored him at the highest risk level to reoffend, and CORE's clinical director opined that appellant was not amenable to treatment programming in the community.

Appellant also presented testimony from several witnesses. Appellant's dispositional advisor testified on appellant's behalf. Appellant's mother testified that she

---

[1] The district court required appellant to undergo outpatient treatment because he could not afford inpatient treatment.

has leukemia, that appellant is her caregiver, and that he had missed a couple of his CORE therapy sessions due to factors outside of his control. Appellant also testified that CORE did not meet his needs but that he thought he could be successful at another program if given another chance. The district court ordered appellant to serve 150 days in jail and reinstated his probation, adding the conditions that appellant enter an outpatient sex-offender treatment program within 45 days of his release and that he could not miss more than one therapy session per month.

Appellant began attending a different outpatient sex-offender treatment program, Project Pathfinder, in January 2023. However, in May 2023, appellant's corrections agent filed a second probation-violation report after appellant tested positive for methamphetamine.

The district court held a second probation-violation hearing, during which appellant admitted to the violation. The state relied on the testimony presented at the first disposition hearing to support its request that the district court execute appellant's sentence. Appellant's corrections agent also testified and reiterated his prior testimony that appellant presented a high risk to reoffend but acknowledged that the only violation appellant had committed since the last hearing was the methamphetamine use. Appellant testified that he was otherwise doing well with his sex-offender treatment program and that his mother's deteriorating health supported the district court giving him another chance.

The district court revoked appellant's probation and executed his sentence. This appeal follows.

**DECISION**

Appellant argues that the district court abused its discretion by revoking his probation because (1) it failed to weigh the policies favoring probation and (2) the record does not support its determination that the need for confinement outweighed the policies favoring probation. The state has not filed a brief in this matter, and we therefore decide this case on the merits. Minn. R. Civ. App. P. 142.03.

When a district court finds that a probation violation has occurred, it has the discretion to continue the defendant on probation, order intermediate sanctions, or revoke probation and execute the sentence. Minn. R. Crim. P. 27.04, subd. 3(2)(b). However, before a district court can revoke probation, "the court must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that [the] need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980); *see also State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2005). These findings are known as the *Austin* factors.

Appellant acknowledges that the first two *Austin* factors are met and only disputes the district court's determination on the third factor. For that factor, "courts must balance the probationer's interest in freedom and the state's interest in [ensuring their] rehabilitation and the public safety." *Modtland*, 695 N.W.2d at 607 (quotation omitted). When evaluating the third *Austin* factor, district courts should consider the three *Modtland* subfactors: whether (1) "confinement is necessary to protect the public from further criminal activity by the offender," (2) "the offender is in need of correctional treatment which can most effectively be provided if he is confined," or (3) "it would unduly

5

depreciate the seriousness of the violation if probation were not revoked." *Id.*; *State v. Smith*, 994 N.W.2d 317, 320 (Minn. App. 2023), *rev. denied* (Minn. Sept. 27, 2023). "Only one *Modtland* subfactor is necessary to support revocation." *Smith*, 994 N.W.2d at 320. "[W]e review de novo whether the district court made the required findings to revoke probation." *Id.*

A district court's decision to revoke probation "cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted). District courts must "create thorough, fact-specific records setting forth their reasons for revoking probation" and "the evidence relied upon." *Modtland*, 695 N.W.2d at 608. However, a transcript of oral findings and reasoning by the district court can satisfy the "written findings" requirement. *Id.*, n.4. Appellate courts review a district court's determination that there is sufficient evidence to revoke probation for an abuse of discretion. *Austin*, 295 N.W.2d at 249-50. "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Fortner*, 989 N.W.2d 368, 374 (Minn. App. 2023) (quotation omitted).

Here, the district court relied on the first *Modtland* subfactor by stating that, "while I would like to see rehabilitation, the goal is public safety." The district court further stated that it relied on testimony from the corrections officer and the CORE clinical director, appellant's use of methamphetamine significantly increasing his likelihood to reoffend, and appellant's already high risk of recidivism. The district court noted that appellant's

6

"carelessness to engage in risky activity that would lead to re-offense [was] an extreme public safety concern."

Appellant argues that the district court abused its discretion by failing to make explicit findings regarding the policies favoring probation.[2]  However, as noted above, a finding that one *Modtland* subfactor has been met satisfies the third *Austin* factor.  *Smith*, 994 N.W.2d at 320.

Appellant also argues that the record does not support the district court's determination[3] because the district court (1) relied solely on his substance use to support revocation and (2) took judicial notice of irrelevant prior testimony by the CORE clinical director that did not consider appellant's progress in the Project Pathfinder treatment program.

Here, the record shows that the district court also relied on other evidence, including both the CORE clinical director's and the correction officer's testimony that appellant presented the highest risk-level for reoffending.  Further, new criminal charges or documented dangerous conduct is not required for a district court to revoke probation.  *See State v. Rottelo*, 798 N.W.2d 92, 95 (Minn. App. 2011), *rev. denied* (Minn. July 19, 2011).

[2] Appellant cites to nonprecedential cases, *State v. Sayers*, No. A15-1345, 2016 WL 1619389 (Minn. App. Apr. 25, 2016) and *State v. Hill*, No. A19-0313, 2019 WL 5107465 (Minn. App. Oct. 14, 2019).  But nonprecedential cases are not binding on us.
[3] Appellant also argues that the record doesn't support findings on the second and third *Modtland* subfactors that appellant "is in need of correctional treatment that could be provided most effectively while he was confined" or that "it would unduly depreciate the seriousness of the violation if [his] probation were not revoked." 695 N.W.2d at 607. Because the district court did not make findings regarding these subfactors, and because the record supports the district court's finding on the first subfactor, we decline to address appellant's argument.

Appellant further argues that the district court abused its discretion by basing its revocation on his substance use because it did not previously order that he obtain a chemical-health assessment or participate in chemical-dependency programming. This argument is unavailing because appellant's probation conditions required him to abstain from possessing or using unprescribed drugs.

As to appellant's second argument, in deciding whether revocation is appropriate, the district court may consider the "original offense and the *intervening conduct* of the offender." *Fortner*, 989 N.W.2d at 375 (emphasis added). The CORE clinical director's testimony related to appellant's psychosexual-assessment report and his risk to reoffend, factors which maintained their relevance despite appellant entering a new treatment program. Furthermore, the district court also heard and relied on testimony from appellant's corrections agent, who had supervised appellant throughout the case and on previous sex offenses.

We conclude that the district court did not abuse its discretion by revoking appellant's probation.

**Affirmed.**